FILED'08 JUN 16 12:39USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,        CR 07-30036-PA

v.                              **ORDER**

JUAN PINEDA-MORENO, and PEDRO
PONCE-MORENO,

        Defendants.

**PANNER, J.**

    Defendants Juan Pineda-Moreno and Pedro Ponce-Moreno are charged with conspiracy to manufacture marijuana and manufacture of marijuana. Defendants move to suppress. I deny the motions.

### Background

    On May 28, 2007, in Phoenix, Oregon, DEA special agent Mark Shaver noticed Pineda-Moreno, Ponce-Moreno, and another person shopping in the home and garden section of a Home Depot store. The men were buying large amounts of Vigoro 21-0-0 fertilizer, which Shaver recognized as a fertilizer that had been found at

1 - ORDER

marijuana grows in Jackson and Josephine counties. The three men left in a 1997 Jeep Grand Cherokee with California licence plates.

During June 2007, employees at stores in the Phoenix area reported to law enforcement that Pineda-Moreno and Ponce-Moreno were using cash to buy irrigation equipment, deer repellent, and large quantities of groceries. Government agents determined that Pineda-Moreno and Ponce-Moreno were living in a trailer at 135 Fern Valley Road, No. 91, in Phoenix, Oregon.

In late June 2007, government agents saw another Jeep drive away from the Fern Valley trailer, with Pineda-Moreno as a passenger. When the Jeep was returning, the driver speeded up and slowed down while looking around, as though to see whether he was followed (which he was).

Police placed mobile trackers on Pineda's Jeep Grand Cherokee starting in early July 2007. From July to September 2007, the tracking devices indicated that the Jeep traveled several times between a remote highway turnout just south of the Oregon-California border in Del Norte County, and a location in rural East Evan Creek, Oregon. The men usually stayed only a few minutes at either location.

On September 12, 2007, the tracking device indicated that the Jeep was leaving the Del Norte turnout and headed toward Medford. James Williams, a Medford police detective working with a DEA task force, and others had not found a marijuana grow near

2 - ORDER

the two remote locations where the Jeep had been stopping. Williams knew, however, that two months previously, law enforcement agents had discovered a marijuana grow several miles from the turnout. One of the men arrested there had told law enforcement officers that another marijuana grow was near the Del Norte County location.

At about 9:45 p.m. on September 12, 2007, Williams saw the Jeep Grand Cherokee headed south on I-5. The Jeep stopped briefly at Ray's Food Place in Phoenix, Oregon, which is only about 300 yards from the Fern Valley trailer. The three men in the Jeep were later identified as Pinenda-Moreno, Ponce-Moreno, and Jose Ojeda-Picasso (a defendant who has been dismissed).

Phoenix police officer Kevin Myers, acting at Williams's request, stopped the Jeep at about 9:55 p.m. in the parking lot at Ray's. Myers took the driver's license from the Jeep's driver and gave the license to Williams.

At about 10 p.m., the officers requested assistance from Immigration and Customs Enforcement (ICE). While waiting for ICE agents to arrive, Williams asked Deputy Natalie Avery, who spoke Spanish, to request that the three men consent to a search of the Jeep. Pineda-Moreno testified that he did not understand what was being said until Avery arrived to translate. Pineda-Moreno signed a bi-lingual written consent form allowing the search of the vehicle. The three men also consented orally to a search of the vehicle. The officers did not handcuff the three men, and

3 - ORDER

asked them to wait at the curb while officers searched the Jeep. Pineda-Moreno testified that he felt "scared" sitting on the curb, and thought that he "didn't have any other option."

At about 10:40 p.m., Fernando Lozano and Mark Inman, two agents from ICE, arrived at Ray's wearing civilian clothes with handguns concealed under their shirts. When Lozano approached the three men, he smelled fresh marijuana on Ojeda-Picasso. Ojeda-Picasso denied having anything to do with marijuana. Lozano warned Ojeda-Picasso that lying to a federal agent was a crime in itself. Lozano determined that Ojeda-Picasso was in the United States illegally, and read Miranda warnings to him. The other two men were not given Miranda warnings that night.

Lozano then questioned Ponce-Moreno, determining that he also was in the United States illegally. When Ponce-Moreno told Lozano that he had come from Santa Cruz, California, Lozano said he didn't believe him, and that Ponce-Moreno was probably coming from a marijuana grow just south of the California-Oregon border. Ponce-Moreno said that he worked in a vineyard and that pruning shears found in the vehicle were used on grapevines. Lozano told Ponce-Moreno that he had been under surveillance for some time and that his car had been seen parked at the Fern Valley trailer. Ponce-Moreno then admitted that he was living there, and orally consented to a search of the trailer. Lozano then took Ponce-Moreno into custody. Lozano states that the Ponce-Moreno, Pinenda-Moreno, and Ojeda-Picasso were all very calm and polite.

4 - ORDER

The law enforcement personnel were courteous throughout the arrest.

ICE agent Inman initially interrogated Pineda-Moreno, determining that he was in the United States illegally. Lozano asked Pineda-Moreno if he would permit a search of the Fern Valley trailer. Neither Inman nor Lozano told Pineda-Moreno that he had a right to refuse consent. Pineda-Moreno orally agreed to a search. Pineda-Moreno testified that when he asked Lozano whether he could refuse consent to search the residence, Lozano replied the officers could make a phone call and get permission to search. Pineda-Moreno said he felt that he had no choice on giving consent to search.

Lozano drove the three men, who were handcuffed, to the Fern Valley trailer. Lozano read the consent forms in Spanish to Pineda-Moreno and Ponce-Moreno. The consent forms stated that the men did not have to consent. At about midnight, the men signed the consent forms. Agents found marijuana in the Fern Valley trailer.

## Discussion

### I. Warrantless Search of a Vehicle

The first issue is whether police had reasonable suspicion to support the warrantless stop of defendants' Jeep Cherokee in the parking lot at Ray's Food Place in Phoenix, Oregon.

"Officers have reasonable suspicion when 'specific, articulable facts . . . together with objective and reasonable

5 - ORDER

inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" <u>United States v. Choudhry</u>, 461 F.3d 1097, 1100 (9th Cir. 2006) (citation omitted), <u>cert. denied</u>, 127 S. Ct. 1318 (2007). The court must consider the totality of circumstances in considering whether there was reasonable suspicion. <u>United States v. Arvizu</u>, 534 U.S. 266, 273-75 (2002). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." <u>Id.</u> at 277.

Here, the arresting officers knew before they stopped defendants' vehicle that defendants had purchased a type of fertilizer used in marijuana grows, as well as irrigation equipment, and deer repellent. The arresting officers knew that defendants had been traveling to two remote locations, in areas where marijuana grow sites had been found. They knew that Pineda-Moreno had been a passenger in a vehicle whose driver had attempted to avoid being followed.

These facts could be considered innocent in isolation. However, the Supreme Court has warned courts not to use a "divide and conquer" analysis of the facts the government claims support reasonable suspicion. <u>Arvizu</u>, 534 U.S. at 274. Here, there was sufficient evidence to support reasonable suspicion that defendants were connected to a marijuana-growing operation, justifying the stop of defendants' vehicle. The subsequent search of the vehicle was supported by probable cause because the

6 - ORDER

officers immediately smelled fresh-cut marijuana on Ojeda-Picasso. In addition, defendants voluntarily consented to the search of the vehicle.

**B. Consent to Search House**

The next issue is whether defendants' consent to search the trailer home on Fern Valley Road was valid. Defendants gave both oral and written consents, but now contend that their consents were not voluntary.

To determine whether a person's consent to search was valid, the court may consider "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether <u>Miranda</u> warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained." <u>United States v. Cormier</u>, 220 F.3d 1103, 1112 (9th Cir. 2000). The court must "consider the totality of the circumstances when evaluating consent. Thus, it is not necessary for all five factors to be satisfied in order to sustain a consensual search." <u>Id.</u> at 1113. The government bears the burden of showing that consent is valid by a preponderance of the evidence. <u>United States v. Reid</u>, 226 F.3d 1020, 1025 (9th Cir. 2000).

Here, the government has carried its burden of showing that the defendants' consents to search the house were valid. Although defendants were under arrest when they gave consent, there was no evidence that law enforcement agents threatened or

7 - ORDER

attempted to coerce defendants into consenting. Defendants consented orally and in writing.

## CONCLUSION

Defendants' motions to suppress (##17 and 24) are denied.

DATED this __16__ day of June, 2008.

*/s/ Owen M. Panner*
OWEN M. PANNER
U.S. DISTRICT JUDGE

8 - ORDER